**KELLER & GOGGIN, P.C.**

By: James M. Duckworth, Esquire                    Attorney for Plaintiff

1528 Walnut Street, Suite 900

Philadelphia, PA 19102

(215) 735-8780

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| FED CETERA, LLC, a New Jersey limited liability company | CIVIL ACTION |
| Plaintiff | |
| v. | Hon. _____ |
| NATIONAL CREDIT SERVICES, INC., a Washington corporation, | DOCKET NO. |
| Defendant | |

**COMPLAINT**

*Parties*

1. Plaintiff is Fed Cetera, LLC (Fed Cetera) a New Jersey limited liability company. Fed Cetera has its principal place of business at 577 Haddon Avenue, Suite 200, Collingswood, New Jersey 08108. Fed Cetera is a citizen of the State of New Jersey. Fed Cetera is the assignee of an Agreement between Net Gain Marketing, Inc and defendant.

2. Defendant National Credit Services, Inc. (NCS) is a Washington corporation. NCS has its principal place of business at 2525 220th Street SE, Suite 200, Bothell WA 98021. NCS is a citizen of the State of Washington.

*Jurisdiction and Venue*

3. Jurisdiction of this Court is based upon 28 U.S.C. §1332, diversity of citizenship, the parties being citizens of different states and the amount in controversy being in excess of $75,000, without interest and costs. Plaintiff also invokes the supplemental jurisdiction of this Court under 28 U.S.C. §1367 over related claims.

4. Venue is appropriate in this District, a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, 28 U.S.C. §1391 (b).

*Statement of Claim*

5. Net Gain Marketing, Inc. is a New Jersey corporation, in the business of providing consulting and business development services related to the acquisition of Federal contracts and subcontracts to businesses in the debt collection business.

6. NCS is in the debt collection business and desired to establish and obtain contacts and consulting to obtain Federal contracts and subcontracts and enhance its business in the collection of student debt.

7. Net Gain Marketing, Inc. had, and its assignee, Fed Cetera has, a specialty business and ability through their network of contacts to introduce NCS to business relationships that would benefit NCS in obtaining business as a subcontractor and/or "teaming" partner, as that term is commonly understood in relation to Federal contracts involving debt collection, to Private Collection Agency (PCA) vendors to United States government agencies.

8. Effective February 1, 2010, NCS entered into a contract with Net Gain Marketing, Inc. entitled "Net Gain Marketing Federal Contract Teaming/Subcontracting Finder's

Agreement" (Agreement) whereby Net Gain Marketing, Inc. was to seek to secure, and be paid for obtaining business, for NCS. A true and correct copy of the NCS Agreement is attached hereto as Exhibit A and incorporated by reference.

9. On or about January 1, 2013 the Agreement between Net Gain Marketing, Inc. and NCS was assigned by Net Gain Marketing, Inc. to Plaintiff Fed Cetera pursuant §17 thereof.

10. Pursuant to the Agreement, Net Gain Marketing, Inc. engaged in activities to introduce NCS to business relationships.

11. Net Gain Marketing, Inc. succeeded in introducing NCS to Account Control Technology, a PCA.

12. As a result of the efforts of Net Gain Marketing, Inc. on behalf of NCS pursuant to the Agreement, in 2011 NCS entered into a Subcontract with the PCA, Account Control Technology.

13. In recognition of and in compliance with its Agreement with Net Gain Marketing, Inc. (now Fed Cetera), NCS, under the Subcontract with Account Control Technology, has been making payment pursuant to §5 of the Agreement (Exhibit A) which reads:

**Compensation**. If, at any time during the term of this agreement, or one year thereafter (the "Applicable Period"), any Fee Transaction (as hereinafter defined) is consummated by Principal [NCS] or any entity controlling, controlled by or under common control with Principal (hereinafter referred to as a "Principal Affiliate"), then Principal shall pay to Consultant (Fed Cetera), for the duration of the term of any agreement resulting in said Fee Transaction (a Principal-Third Party Agreement"), including renewals, a finder's fee (the "Fee") in the amount of two and one-half (2.5%) of gross revenues paid pursuant to the Principal-Third Party Agreement. The term "Fee Transaction" means the consummation, with any Federal Contractor, of any transaction related to "teaming" or "subcontracting" as those terms are commonly understood in Federal contracting, for the benefit of Principal or a Principal Affiliate during the applicable period. The term "Fee Transaction" also means the subsequent consummation of any contract with any Federal government agency for which the Principal has been invited to compete,

and is later awarded a contract to perform, which both parties herein expressly agree shall have arisen due to the "teaming" or "subcontracting" engagement Finder may have facilitated in advance of any such award of a contract by a Federal government agency. The Fee shall be due and payable until fees are no longer generated from any and all Fee Transactions, within thirty (30) days after each receipt during such period by Principal or Principal Affiliate of revenue resulting from or in any way related to the Fee Transaction, including any fees paid after the expiration or termination of any contract by such Third Party.

14. Pursuant to §8 of the Agreement between Fed Cetera and NCS (Exhibit A), **Recordkeeping/Audit Rights**, NCS is required to keep certain records and, on a monthly basis, provide to Fed Cetera copies of certain records to ensure compliance with the Compensation requirements of the Agreement.

15. NCS was invited to compete for a contract by ED in 2013 through the publication of the Solicitation and the express invitation by ED to NCS to participate in Phase 2 as indicated on the *FedBizOpps* website on November 19, 2013. Awardees, including NCS, were publicly announced on October 3, 2014, just a few days after NCS and ED signed the NCS/ED Agreement on September 30, 2014.

16. In accordance with the Agreement between Fed Cetera and NCS (Exhibit A), the NCS/ED Agreement is a "Fee Transaction" consummated during the term of the Agreement between Fed Cetera and NCS.

17. In about September of 2016, NCS began performing work for the U.S. Department of Education (ED) as a PCA, through the contract award originating from solicitation ED-FSA-13-R-0006 (Solicitation) and corresponding contract number ED-FSA-14-D-0018, between NCS and ED (NCS/ED Agreement).

4

18. Section 5 of the Agreement between Fed Cetera and NCS (Exhibit A) defines the term "Fee Transaction" to include the "consummation of any contract with any Federal government agency for which Principal has been invited to compete, and is later awarded a contract to perform, which both parties herein expressly agree shall have arisen due to any 'teaming' or 'subcontracting' engagement Finder may have facilitated in advance of any such award of a contract by a Federal government agency."

19. NCS has failed and refused to honor its obligations to pay compensation to Fed Cetera from revenue received by NCS from the NCS/ED Agreement, and NCS is in breach of the Agreement between Fed Cetera and NCS (Exhibit A).

20. Despite request and demand, on the NCS/ED Agreement, NCS has refused to comply with its revenue reporting requirements to Fed Cetera pursuant to §8 of the Agreement between Fed Cetera and NCS, entitled "Recordkeeping/Audit Rights," and is in breach thereof.

21. Pursuant to §§14 and 18 of the Agreement between Fed Cetera and NCS (Exhibit A), Fed Cetera, as the successful and prevailing party, is entitled to its reasonable attorneys' fees and costs, in addition to any other relief.

22. Pursuant to §18 of the Agreement between Fed Cetera and NCS (Exhibit A), Fed Cetera is entitled to interest in the amount of 2% per month.

## FIRST COUNT
(Specific Performance)

23. The averments set forth in paragraphs 1 through 22 are incorporated by reference as though set forth at length herein.

24. The Agreement is fair and equitable and is supported by adequate consideration.

25. There was a clear and definite promise that plaintiff Fed Cetera would have rights of Compensation and Recordkeeping/Audit Rights.

26. Fed Cetera has relied upon the promise of NCS and has performed its obligations pursuant to the Agreement.

27. NCS has not performed and has refused and still refuses the performance specified in the contract to be performed by NCS although Plaintiff has demanded it to do so.

28. The actions of defendant NCS have denied the right of plaintiff Fed Cetera to enjoyment of the fruits of its work.

29. Plaintiff Fed Cetera has no plain, speedy, and adequate legal remedy that would be as efficient to attain the ends of justice and its prompt administration as a decree for specific performance would be in that plaintiff cannot enjoy the fruits of its work without the cooperation and performance of defendant NCS. Damages are an inadequate remedy the subject matter of the Agreement being of such a special nature or peculiar value that damages would not be a just and reasonable substitute. Damages are also inadequate as they are not possible to measure or cannot be measured with any degree of certainty.

30. Specific performance is an appropriate remedy as it will do more perfect and complete justice than damages would.

31. Specific performance of the contract would be fair and equitable and would not be unduly harsh on the defendant.

WHEREFORE, plaintiff Fed Cetera, LLC respectfully requests judgment in its favor and against National Credit Services, Inc. and a Decree that:

    a. National Credit Services, Inc. shall comply with its revenue reporting requirements to Fed Cetera, LLC pursuant to §8 of the Agreement between Fed Cetera, LLC and National Credit Services, Inc., entitled "Recordkeeping/Audit Rights," on an ongoing basis for the duration of the NCS/ED Agreement (Fee Transaction);

    b. National Credit Services, Inc. shall pay damages to Fed Cetera, LLC in an amount to be determined at trial;

    c. Fed Cetera, LLC be reimbursed its attorney's fees and costs; and

    d. Such other relief as this court deems just and proper.

## SECOND COUNT
(Breach of Contract)

32. The averments set forth in paragraphs 1 through 31 are incorporated by reference as though set forth at length herein.

33. Defendant NCS is in breach of the Agreement between Fed Cetera and NCS (Exhibit A) by its refusal to honor its obligations to pay compensation to Fed Cetera from revenue received by NCS from the NCS/ED Agreement.

34. As a result of the breach and breaches of defendant NCS, plaintiff Fed Cetera has suffered damage in an amount not yet determined.

WHEREFORE, plaintiff Fed Cetera, LLC requests judgment against the defendant National Credit Services, Inc. in an amount to be determined at trial, believed to be in excess of

$75,000, together with interest, cost and reasonable attorneys' fees pursuant to the Agreement.

Respectfully submitted:
**KELLER & GOGGIN, P.C.**

BY: _____
James M. Duckworth
Suite 900
1528 Walnut Street
Philadelphia PA 19102-3622
(215) 735-8780
Attorney for Plaintiff

Of Counsel:

Michael J. McCaney, Jr.
Suite 900
1528 Walnut Street
Philadelphia PA 19102-3622
215-496-0177
*mjm@mccaneylaw.com*

## CERTIFICATION UNDER LOCAL CIVIL RULE 11.2

I hereby certify that this matter is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

**KELLER & GOGGIN, P.C.**

BY: _____
James M. Duckworth

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

FED CETERA, LLC, a New Jersey limited liability company

        Plaintiff

v.

NATIONAL CREDIT SERVICES, INC., a Washington corporation,

        Defendant

CIVIL ACTION

DOCKET NO.

# EXHIBIT A

**Net Gain Marketing Federal Contract**
**Teaming / Subcontracting Finder's Agreement**

This Finder's agreement ("Agreement"), effective as of __02/01/2010__ (Effective Date), is entered by and between Net Gain Marketing, Inc. (Consultant or NGM), a New Jersey Corporation located at P.O. Box 353, Collingswood, NJ 08108, and National Credit Services, Inc., a Washington corporation with its principal place of business at 17704 134th Ave NE Woodinville, WA 98072 (Principal).

## RECITALS

WHEREAS, Principal is engaged in the business of debt collection services, and

WHEREAS, Consultant, through his professional occupation and network of contacts has the ability to introduce Principal to business relationships that would benefit the business of Principal related to call center and/or debt collection contracts, and

WHEREAS, Principal desires to engage the services of Consultant to arrange a meeting of such persons and to advise Principal on issues that may assist Principal in reaching an agreement for a potential business transaction with the referred party;

NOW THEREFORE, in consideration of the premises and the mutual covenants and agreements herein set forth, and intending to be legally bound, Principal and Consultant agree as follows:

1. **Term, Exclusivity & Termination.** Principal engages Consultant, to the exclusion of any other consultant, for the purposes defined in this Agreement, and Consultant agrees to provide services to Principal commencing on the Effective Date and ending five (5) years thereafter (hereinafter, the "Term"). Principal shall not solicit Federal contractors for purposes of establishing a subcontracting or teaming relationship while this contract is in effect and shall refer all solicitations received to the Consultant. Notwithstanding the foregoing, this Agreement may be terminated by either party, for any reason, on an immediate basis, upon written notice to the other party, provided however, that any such earlier termination shall not relieve Principal from its payment obligations pursuant to Sections 5 (Finder's Fees) and 6 (Expenses) of this Agreement.

2. **Duties of Consultant.** The Consultant will provide the following services (the "Services"):

    a. Consultant will introduce Principal to debt collection agencies for which there is an opportunity for Principal to enter into a business transaction concerning "teaming" and subcontracting, as the terms are commonly understood in relation to Federal contracts involving debt collection;
    b. Consultant will perform functions that may be reasonably requested by Principal of Consultant in relation to making such introductions and assisting otherwise with the negotiations between the parties;
    c. Consultant will notify Principal of introductions it makes for potential transactions in a timely manner.
    d. Upon receipt of Principal's approval, conduct meetings in person or by telephone, with such other parties.

3. **Allocation of Time and Energies.** The Consultant will perform in a professional manner with appropriate skill and care and in accordance with accepted standards. Although no specific hours-per-day requirement will be required, the parties acknowledge and agree that a disproportionately large amount of the effort to be extended and the costs to be incurred by the Consultant, and the benefits to be received by Principal, are to be expected to occur upon and shortly after an introduction is made by Consultant.

4. **Other Covenants/Representations/Waiver of Conflict.**

    a. It is acknowledged and agreed to by Principal that Consultant may receive a fee from the third party who is being introduced to Principal and that Consultant may be providing similar services to such third party in connection with such negotiations and that the fees payable by Principal hereunder shall not be offset by such third-party fees paid to Consultant.
    b. Consultant covenants that it will keep all proprietary Information of Principal confidential and will not to disclose any of such Information to any third party, except for such information that Principal has indicated in writing to Consultant may be disclosed for purposes of evaluation of a transaction pursuant to this Agreement. Principal expressly permits Consultant to release data and information, provided by Principal to Consultant, to any third party Consultant deems appropriate for purposes contemplated by this agreement.
    c. It is understood that Consultant is a "Finder". Principal and only Principal shall be responsible for the decision to consummate any transaction with a third party.
    d. It is further understood that Principal, and not Consultant, is responsible to perform any and all due diligence on any third party introduced to it by Consultant under this Agreement, prior to Principal closing on any transaction.
    e. Principal warrants that all communications, documents or materials furnished to Consultant shall be materially accurate.
    f. Principal shall take no act nor omit to take any action that shall cause this Agreement to be circumvented, including but not limited to entering into any agreement directly with a client that would have otherwise given rise to a Fee (as defined below)

payable to Consultant. In such event, Principal agrees that it shall have been deemed to have assigned to Consultant Principal's rights to collect such amounts in respect of the Principal-client agreement directly from Principal's client

5. **Compensation.** If at any time during the term of this agreement, or one year thereafter, (the "Applicable Period"), any Fee Transaction (as hereafter defined) is consummated by Principal, or any entity controlling, controlled by or under common control with Principal (hereinafter referred to as a "Principal Affiliate"), then Principal shall pay to Consultant, for the duration of the term of any agreement resulting in said Fee Transaction (a "Principal-Third Party Agreement"), including renewals, a finder's fee (the "Fee") in the amount of two and one-half percent (2.5%) of gross revenues paid pursuant to the Principal-Third Party Agreement. The term "Fee Transaction" means the consummation, with any Federal contractor, of any transaction related to "teaming" or "subcontracting" as those terms are commonly understood in Federal contracting, for the benefit of Principal or a Principal Affiliate, during the Applicable Period. The term "Fee Transaction" also means the subsequent consummation of any contract with any Federal government agency for which Principal has been invited to compete, and is later awarded a contract to perform, which both parties herein expressly agree shall have arisen due to any "teaming" or "subcontracting" engagement Finder may have facilitated in advance of any such award of a contract by a Federal government agency. The Fee shall be due and payable until fees are no longer generated from any and all Fee Transactions, within thirty (30) days after each receipt during such period by Principal or Principal Affiliate of revenue resulting from or in any way related to the Fee Transaction, including any fees paid after the expiration or termination of any contract by such Third Party.

6. **Expenses.** Consultant agrees to pay for all its expenses (phone, labor, etc.), other than extraordinary items for which Principal will reimburse Consultant. Such extraordinary items include travel and entertainment required by/or specifically requested by Principal, luncheons or dinners, faxing, conference calls, and like expenses approved by Principal prior to its incurring an obligation for reimbursement.

7. **Indemnification.** Principal agrees to indemnify and hold harmless Consultant, its officers, directors, employees, affiliates and agents harmless from and against any and all losses, claims, damages and liabilities, related to or arising out of any breach by Principal of its obligations under this Agreement and/or Principal's intentional or grossly negligent actions and/or misrepresentations by Principal in connection with the transactions and/or activities contemplated herein.

8. **Recordkeeping/Audit Rights.** Strictly for purposes of ensuring compliance with the payment provisions of this Agreement, Principal shall keep true, accurate and complete records with respect to all services provided by it in respect of transactions created pursuant to this Agreement for a period of two (2) years after the last year in which Principal received proceeds from such services to a third party in respect of this Agreement. On a monthly basis, Principal shall provide Consultant a copy of any and all invoices it may send to a third party, such as a teaming partner, prime vendor utilizing Principal as a subcontractor, or a Federal government agency, that would give rise to fees payable to Consultant pursuant to this Agreement. Invoices shall be provided via email or fax automatically without any request made by Consultant. At the request of Consultant, Principal and its affiliates shall permit an independent certified public accountant appointed by Consultant, at reasonable times and upon reasonable notice, to examine those records and all other material documents relating to services provided by it in respect of transactions created pursuant to this Agreement in the possession or control of Principal or its affiliates, for a period of two (2) years after same have accrued, as may be necessary to ensure the proper payment to Consultant of fees due. Said accountant shall not disclose to Consultant any other information belonging to Principal. The results of any such examination shall be made available to both parties. In the event that such audit reveals a shortfall in excess of 10% of the amount received by Consultant from Principal during the previous 12 months, Principal shall bear the full cost of the performance of any such audit.

9. **Status as Independent Contractor.** Consultant's engagement pursuant to this Agreement shall be as independent contractor, and not as employee, officer or other agent of Principal. Neither party to this Agreement shall represent or hold itself out to be the employer or employee of the other. Consultant further acknowledges the consideration provided hereinabove is a gross amount of consideration and that Principal will not withhold from such consideration any amounts as to income taxes, social security payments or any other payroll taxes. All such income taxes and other such payment shall be made or provided for by Consultant and Principal shall have no responsibility or duties regarding such matters. Neither Principal nor the Consultant possesses the authority to bind each other in any agreements, without the express written consent of the entity to be bound.

10. **Waiver.** The waiver by either party of a breach of any provision of this agreement by the other party shall not operate or be construed as a waiver of any subsequent breach by such other party.

11. **Notices.** All notices, requests, and other communications hereunder shall be deemed to be duly given if sent by fax, emailed PDF, or U.S. mail, postage prepaid, addressed to the other party at the address set forth herein below

   | Principal Address: | Consultants Address: |
   |---|---|
   | PO Box 3002 | PO Box 353 |
   | Woodinville, WA 98072 | Collingswood, NJ 08108 |
   | Email: haidari@ncscollect.com | Email: nick@netgain4results.com |
   | Fax: (425)481-0277 | Fax # 866-848-9162 |

   Either party may change address, to which notices for it shall be addressed by providing notice of such change to the other party, in the manner set forth in this paragraph.

12. **Choice of Law, Jurisdiction and Venue.** This Agreement shall be governed by, construed and enforced in accordance with the internal laws of the State of New Jersey, without giving effect to its conflict of laws or choice of law principles.

13. **Remedies.** With the exception of an action brought for injunctive relief by Consultant to enforce the payment provisions of this Agreement and/or by Principal to enforce the confidentiality provisions, any other controversy or claim arising out of or relating to this Agreement, or the alleged breach thereof, or relating to Consultant's activities or remuneration under this Agreement, shall be settled by binding arbitration in accordance with the applicable rules of the American Arbitration Association, and judgment on the award rendered by the arbitrator(s) shall be binding on the parties and may be entered in any court having jurisdiction.

14. **Attorneys' Fees.** If any legal action(s) or any arbitration or other proceeding(s) is brought for the enforcement or interruption of the Agreement, or because of alleged dispute, breach, default or misrepresentation in connection with or related to this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorney's fees and other costs in connection with that action(s) or proceeding(s), in addition to any other relief to which they may be entitled.

15. **Recourse for Other Third Parties:** Principal acknowledges that Consultant may enter into separate agreements with other third party consultants in which NGM may compensate such third parties for assisting in making introductions pursuant to this agreement. To the extent Principal defaults on the payment provisions of this agreement, Principal acknowledges and accepts such third parties' rights to pursue payment directly from Principal for any amount(s) not to exceed any amount(s) otherwise due to Consultant. Nothing in this provision is intended to grant Principal the right to remit directly to any such third party without the express written consent of Consultant.

16. **Complete Agreement.** This Agreement contains the entire agreement of the parties relating to the subject matter hereof. This Agreement and its terms may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification, extension or discharge is sought.

17. **Successors/Assigns.** Either Party may assign its rights under this Agreement in whole or in part to any person or entity that controls, is controlled by or is under common control with such Party, which shall thereafter be substituted directly for such Party hereunder, provided that such assignee agrees in writing to be bound by the terms of this Agreement. In connection with any such assignment, the assigning Party hereby unconditionally guarantees the performance of the obligations pursuant to this Agreement of any assignee.

18. **Interest and Penalties.** Interest in the amount of 2% per month shall accrue and be payable from Principal to Consultant in the event of any payment due to Consultant that is not received by Consultant within thirty (30) days from the due date. Principal shall pay all fees and costs, including any attorney's fees, incurred by Consultant in respect of collection of amounts owed to Consultant.

IN WITNESS WHEREOF, the parties have hereafter executed this Finder and Consulting Agreement by their respective authorized person as of the Effective Date

| Net Gain Marketing | | Client | |
|---|---|---|---|
| Date | 2/5/10 | Date | 02/01/2010 |
| By: | | By: | |
| Name: | Nick Bernardo | Name | Asghar Haidari Safaiy |
| Title: | President | Title | President |