## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FED CETERA, LLC, | : | |
| | : | Civil Action No.:  1:17-cv-02809 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NATIONAL CREDIT SERVICES, INC., | : | |
| | : | |
| Defendant. | : | |

### NATIONAL CREDIT SERVICES, INC.'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)

Respectfully submitted,

By:  _/s/     David J. Walton_
    David J. Walton
    Email: dwalton@cozen.com
    Arthur P. Fritzinger
    Email: afritzinger@cozen.com
    **Cozen O'Connor**
    457 Haddonfield Road
    Cherry Hill, NJ  08002
    (856) 910-5000
    *Attorneys for Defendant*
    *National Credit Services, Inc.*

Dated:  August 9, 2017
Motion Day: September 8, 2017

# TABLE OF CONTENTS

I.     **INTRODUCTION** ..................................................................................1

II.    **FACTUAL ALLEGATIONS IN THE PLEADINGS** ................................2

III.   **LEGAL STANDARD** ..........................................................................4

IV.   **ARGUMENT**........................................................................................6

V.    **CONCLUSION** ...................................................................................9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................5

*Houseman v. Dare*,
   966 A.2d 24 (N.J. Super. 2009) ...............................................1

*Malleus v. George*,
   641 F.3d 560 (3d Cir. 2011) ...................................................5

*Manahawkin Convalescent v. O'Neill*,
   85 A.3d 947 (N.J. 2014) .........................................................6

*McGough v. Broadwing Comm'n, Inc.*,
   177 F. Supp. 2d 289 (D.N.J. 2001) ..........................................8

*In re Miller's Estate*,
   447 A.2d 549 (N.J. 1982) ........................................................7

*Owens v. Press Pub. Co.*,
   120 A.2d 442 (N.J. 1956) .....................................................6, 7

*Turbe v. Gov't of V.I.*,
   938 F.2d 427 (3d Cir. 1991) ...................................................5

*Webster v. Dollar General, Inc.*,
   187 F. Supp. 3d 692, 704 (D.N.J. 2016)...................................6

**Other Authorities**

*Black's Law Dictionary* (10th ed. 2014)...................................7

Fed. R. Civ. P. 12 ..................................................1, 4, 5, 9

11 Williston on Contracts § 31:4 (4th ed.)................................6

13 Williston on Contracts § 38:5 (4th ed.)................................................................8

## I.      INTRODUCTION

Plaintiff in this case, Fed Cetera, LLC ("Fed Cetera"), asserts a single cause of action[1] for breach of contract based upon alleged obligations that arose *after the term of the contract had expired.* The contract between Fed Cetera and Defendant, National Credit Services, Inc. ("NCS"), provides that its term expires, at most, six years after it was executed, *i.e.*, February 1, 2016. Nonetheless, Fed Cetera claims it is owed money pursuant to that contract for work NCS began performing "in or about" September 2016, more than six months after the contract's term had expired. Compl., ¶ 17 (Doc. 1).[2] Plaintiff's breach of contract claim therefore rests upon an expired and void contract, and it cannot be maintained. NCS respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(c).

---

[1]      Fed Cetera's Complaint contains two counts, one for "Specific Performance" (First Count) and one for "Breach of Contract" (Second Count). However, "specific performance" is a remedy for breach of contract and not a legal cause of action itself. *Houseman v. Dare*, 966 A.2d 24, 27 (N.J. Super. 2009) (Specific performance is a remedy which "can be invoked to address a breach of an enforceable agreement when money damages are not adequate to protect the expectation interest of the injured party . . .").

[2]      In its Answer, NCS denied that it began performing the work at issue "in or about September 2016." Ans., ¶ 17 (Doc. 5). However, for purposes of this Motion it is irrelevant whether the work at issue began in September 2016 or began later: even the earliest date suggested in Plaintiff's Complaint is well after the contract between NCS and Fed Cetera had expired.

## II.    FACTUAL ALLEGATIONS IN THE PLEADINGS

NCS offers debt recovery solutions to a range of clients, including the Department of Education ("ED") and other holders of student loan debt. In 2010, NCS hired Net Gain Marketing to help find partners in the student loan industry. On February 1, 2010, NCS entered into a contract with Net Gain Marketing, Inc. ("Net Gain"), under which Net Gain agreed to find partners for NCS and facilitate business between NCS and those partners. *See* Net Gain Marketing Federal Contract Teaming/Subcontracting Finder's Agreement, Compl. Ex. A, Preamble (Doc. 1) ("Net Gain Marketing Contract"). In exchange, NCS was obligated to make payments to Net Gain pursuant to triggers and calculations set forth in the agreement. *See, generally, id.*

Net Gain facilitated one relationship for NCS, with a Private Collection Agency ("PCA") named Account Control Technology. NCS and Account Control Technology entered into a contract for work in 2011, and, as Plaintiff itself asserts, NCS "has been making payment [to Net Gain and Fed Cetera] pursuant to §5 of the Agreement." Compl., ¶ 12-13. There is no allegation whatsoever that NCS has failed to make any payment owed to Plaintiff as a result of NCS's contract with Account Control Technology. Indeed, NCS has paid more than $700,000 to Net Gain and Fed Cetera related to NCS's work for Account Control Technology. Ans., ¶ 13 (Doc. 5).

2

Net Gain did not perform any additional work for NCS. "On or about" January 1, 2013, Net Gain assigned its rights and obligations under the Net Gain Marketing Contract to Plaintiff, Fed Cetera. Compl., ¶ 9. Fed Cetera never performed any work whatsoever for NCS. It never introduced NCS to any potential partners; it never facilitated any relationships for NCS. Fed Cetera essentially sat on the contract it had been assigned and did nothing.

The Net Gain Marketing Contract has a stated term, defined in ¶ 1 of the Agreement as "commencing on the Effective Date and ending five (5) years thereafter." The Preamble of the Agreement defines the Effective Date as "02/01/2010." *Id.*, at Preamble. Accordingly, by its plain words, the term of the Agreement expired on February 1, 2015.

Fed Cetera's claim against NCS arises from obligations allegedly imposed by ¶ 5 of the Net Gain Marketing Agreement. That provision, entitled "Compensation," is structured as an "if/then" sentence: *i.e.*, *if* some event occurs, *then* NCS has obligations outlined in the paragraph. *Id.* More specifically, ¶ 5 states that NCS's obligations arise "If, *at any time during the term of this agreement, or one year thereafter* (the "Applicable Period"), any Fee Transaction (as hereinafter defined) is consummated by Principal [NCS]." As relevant here (because Plaintiff's claim relates to alleged work performed for ED), "Fee Transaction" means the "consummation of any contract with any Federal

3

government agency for which the Principal has been invited to compete, and is later awarded to a contract to perform. . ." *Id.*

Because the term of the Agreement expired on February 1, 2015, obligations under ¶ 5 of the Agreement could only have arisen up to "one year thereafter", *i.e.*, February 1, 2016. Plaintiff does not allege that NCS consummated any contract with ED or any other federal agency before February 1, 2016. *See, generally,* Compl. Rather, Plaintiff's entire claim rests upon events that occurred at least seven months later: Plaintiff's allegation that "In or about September of 2016, NCS began performing work of the U.S. Department of Education (ED) as a PCA." *Id.*, ¶ 17.

Plaintiff's breach of contract claim therefore rests entirely upon obligations alleged to have arisen after the term of the Net Gain Marketing Contract had expired and after the one-year grace period provided in ¶ 5 had also expired. By its plain terms, it is impossible for obligations to have arisen in September 2016 under ¶ 5 of the Net Gain Marketing Contract. Accordingly, Plaintiff's claim for breach of contract fails as a matter of law, and its Complaint must be dismissed.

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. Pursuant to Rule 12(h), a party may raise the defense of "failure to

state a claim upon which relief can be granted . . . by a motion under Rule 12(c)."
*See* Fed. R. Civ. P. 12(h)(B); *see also Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d
Cir. 1991). When that occurs, the court applies "the same standards as under Rule
12(b)(6)." *Id.* (citing cases).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead
"enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009).  A plaintiff must plead "more than labels and conclusions, and a
formulaic recitation of the elements of the cause of action will not do." *Twombly*,
550 U.S. at 555.  Conclusory allegations are "not entitled to be assumed true."
*Iqbal*, 556 U.S. at 681 (citing *Twombly*, 550 U.S. at 554-55).

The Third Circuit uses a three-step process for determining the sufficiency
of a complaint.  First, this Court should "'tak[e] note of the elements a plaintiff
must plead to state a clam.'" *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)
(quoting *Iqbal*, 556 U.S. at 675).  Second, this Court "should identify those
allegations that 'because they are no more than conclusions, are not entitled to the
assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  Third, "w[hen] there
are well-pleaded factual allegations, a court should assume their veracity and then
determine whether they plausibly give rise to an entitlement for relief." *Id.*

## IV.   ARGUMENT

It is axiomatic that a plaintiff must plead the existence of a valid, enforceable contract in order to sustain a claim for breach of contract. *Cf. Webster v. Dollar General, Inc.*, 187 F. Supp. 3d 692, 704 (D.N.J. 2016). Accordingly, a breach-of-contract claim fails if it is based upon obligations alleged to have arisen after the contract at issue had expired. *Mossberg v. standard Oil Co. of N.J.*, 237 A.2d 508, 515 (N.J. Super. 1967) ("It is basic contract law that when a contract is terminated the rights and obligations under that contract are also terminated.") (citing 1 Willston on Contracts § 90 (Jaeger ed. 1957)); *Owens v. Press Pub. Co.*, 120 A.2d 442, 448 (N.J. 1956) ("[I]t is fundamental in the law of contracts that upon the expiration of the period thus prescribed the agreement ceased to exist and its provisions had no In future [sic] force and effect.").

Here, Fed Cetera's claim against NCS is based upon obligations that allegedly arose, at the earliest, in September 2016—seven months after NCS's obligation to compensate Fed Cetera expired. Accordingly, that claim fails as a matter of law.

It is a fundamental principal of contract law that where the language of a provision is clear, "the language alone must determine the agreement's force and effect." *Manahawkin Convalescent v. O'Neill*, 85 A.3d 947, 958-59 (N.J. 2014); 11 Williston on Contracts § 31:4 (4th ed.) ("The object in interpreting construing a

written contract is to ascertain the meaning and intent of the parties as expressed in and determined by the words they used."). From this principal arises another well-established rule that parties may agree upon the duration or term of contractual provisions, and their express agreement, reduced to writing, must be enforced by the court. *Cf. In re Miller's Estate*, 447 A.2d 549, 554 (N.J. 1982) (where written contract includes term of duration, it will be enforced by the court); *see also Owens* 120 A.2d at 448-49.

Here, the parties agreed in ¶ 5 of the Net Gain Marketing Contract that NCS was only had an obligation to make payments if it "consummate[ed]**[3]** any contract with a Federal government agency . . . at any time during the term of this agreement, or one year thereafter." Pursuant to ¶ 1 of the Agreement, its term expired on February 1, 2015. Accordingly, ¶ 5 clearly provides that NCS is only obliged to make payments for contracts with Federal government agencies that are consummated on or before February 1, 2016. Said another way, consummation of an agreement with a federal agency on or before February 1, 2016, is a "condition precedent" to NCS's compensation obligations in ¶ 5 of the Net Gain Marketing

---

[3]     Black's Law Dictionary defines "consummated" as "Completed; fully accomplished." *See* "Consummated", *Black's Law Dictionary* (10th ed. 2014). Similarly, the Merriam-Webster dictionary defines "consummate" as "complete in every detail." *See* "Consummate", *Merriam-Webster Online Dictionary* (Aug. 3, 2017).

Contract. *See* 13 Williston on Contracts § 38:5 (4th ed.) ("[A] condition is an event, not certain to occur, which must occur, unless its nonoccurrence is excused, before performance under a contract becomes due.").

Simply put, there is no allegation by Fed Cetera that NCS "consummated" any agreement with a federal government agency between February 1, 2010, and February 1, 2016 (*i.e.*, the "Applicable Period" defined in ¶ 5 of the Net Gain Marketing Contract). Rather, Fed Cetera merely alleges that NCS "began work" for a federal government agency "in or about" September 2016—after the Applicable Period had expired. Compl., ¶ 17. This allegation is insufficient to support Fed Cetera's breach of contract as it does not fulfill the conditions precedent for NCS's payment obligation under ¶ 5. *McGough v. Broadwing Comm'n, Inc.*, 177 F. Supp. 2d 289, 298 (D.N.J. 2001) ("Where a party's promise is expressly made dependent on the existence of a stated condition . . . such a condition must generally be 'literally met or exactly fulfilled' before any binding contractual liability can arise.") (citing 13 Williston on Contracts § 38:6 (4th ed. 2017)); *see also* 13 Williston on Contracts § 38:5 ("If there is a condition precedent, the party in whose favor the condition operates is not obliged unless and until the condition has occurred or been performed.").

Fed Cetera performed no services for NCS, but it has still enjoyed—and continues to enjoy—the benefit of payments from NCS arising from work

performed by NCS for Account Control Technologies. Apparently unsatisfied with this hassle-free income source, Fed Cetera is now seeking additional payment based on work NCS obtained on its own after the provisions of the Net Gain Marketing Contract—including ¶ 5 thereof—had expired. There is no legal basis for Fed Cetera's claim, it is directly barred by the plain language of the Agreement, and it must be dismissed.

## V.    CONCLUSION

As set forth above, Fed Cetera's single legal claim for relief rests upon alleged conduct by NCS after the term of the agreement between the parties had expired. Fed Cetera's claim is barred by the plain language of ¶¶ 1 and 5 of the Net Gain Marketing Agreement, and it therefore fails as a matter of law. NCS therefore respectfully requests that the Court dismiss Fed Cetera's Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(c).

Respectfully submitted,

Dated:  August 9, 2017                     By:   /s/    *David J. Walton*
                                                David J. Walton
                                                Email: dwalton@cozen.com
                                                Arthur P. Fritzinger
                                                Email: afritzinger@cozen.com
                                                **Cozen O'Connor**
                                                457 Haddonfield Road
                                                Cherry Hill, NJ  08002
                                                (856) 910-5000
                                                *Attorneys for Defendant*
                                                *National Credit Services, Inc.*