IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| FED CETERA LLC, | |
| Plaintiff, | Civil No. 17-2809 (RBK/KMW) |
| v. | **OPINION** |
| NATIONAL CREDIT SERVICES INC., | |
| Defendant. | |

**KUGLER**, United States District Judge:

This breach of contract action comes before the Court on Defendant National Credit Services' ("NCS") motion for Judgment on the Pleadings. (Doc. No. 14.) Plaintiff Fed Cetera, LLC seeks to recover a finder's fee for a debt-collection contract NCS entered into with the Department of Education, but NCS maintains that a finder's fee is inappropriate because it did not "consummate" the contract until after the expiration of the governing agreement between Fed Cetera and NCS. As we explain below, NCS's motion is **GRANTED**, as NCS has no obligation to pay Fed Cetera.

**I.    THE FACTS**

This is, and only is, a breach of contract action. NCS is a Washington corporation in the debt collection business. (Compl. at ¶¶ 2, 5.) Net Gain is a consulting and business development firm that provides services related to the acquisition of federal contracts to businesses in the debt collection business. On February 1, 2010, NCS and Net Gain entered into a contract (the "Agreement"). (*Id.* at ¶ 2.)

1

Under the Agreement, Net Gain was to seek and secure business for NCS, for which it would be paid a finder's fee. (*Id.* at 8.) A few years after entering the Agreement, on January 1, 2013, Net Gain assigned its rights to Plaintiff Fed Cetera, LLC, a New Jersey limited liability company. (Compl. at ¶ 9.) Today we consider the scope of Fed Cetera's rights under the Agreement, in particular and as relevant under this section:

> If at any time during the term of this agreement, or one year thereafter (the "Applicable Period"), any Fee Transaction (as hereinafter defined) is consummated by Principal [NCS] or any entity controlling, controlled by or under common control with Principal (hereinafter referred to as a "Principal Affiliate"), then Principal shall pay to Consultant [Fed Cetera], for the duration of the term of any agreement resulting in Said Fee Transaction (a "Principal-Third Party Agreement"), including renewals, a finder's fee (the "Fee") in the amount of two and one-half percent (2.5%) of gross revenues paid pursuant to the Principal-Third Party Agreement.
>
> \*   \*   \*
>
> The term "Fee Transaction" also means the subsequent consummation of any contract with any Federal government agency for which Principal [NCS] has been invited to compete, and is later awarded a contract to perform, which both parties herein expressly agree shall have arisen due to any "teaming" or "subcontracting" engagement Finder [Net Gain] may have facilitated in advance of any such award of a contract by a Federal government agency.
>
> The Fee shall be due and payable until fees are no longer generated from any and all Fee Transactions, within thirty (30) days after each receipt during such period by Principal or Principal Affiliate of revenue resulting from or in any way related to the Fee Transaction, including any fees paid after the expiration or termination of any contract by such Third Party.

(Compl. Ex. A ¶ 5.)

It is clear the "Applicable Period" of the Agreement was for five years from the date of contracting, i.e. from February 1, 2010, to February 1, 2015. This is extended "for one year thereafter," or until February 1, 2016, for the payment of fees under the Agreement. We note also that the Agreement has an integration clause and is governed by the law of New Jersey.

Net Gain had previously introduced NCS to the company Account Control Technology, a Private Collection Agency ("PCA") with which NCS subsequently subcontracted. (Compl. at ¶¶ 11-12.) This appears to have been a "Fee Transaction" within the meaning of the Agreement, and Fed Cetera asserts that NCS has been paying what is essentially a commission fee for this introduction. (Compl. at ¶ 13.)

In 2013, the Department of Education published a solicitation to contract with it as a PCA for collecting student loan debts. (Compl. at ¶¶ 6-7, 15.) The Department expressly invited NCS to participate. (Compl. at ¶ 15.) NCS and the Department then signed a contract (the "DOE Contract") on September 30, 2014. (*Id.*) However, NCS did not begin performing work for the Department as a PCA until September 2016. (Compl. at ¶ 17.)

Fed Cetera seeks a finder's fee for the DOE Contract, as it contends was provided for in the Agreement. Put differently, Fed Cetera argues the DOE Contract is a "Fee Transaction" consummated before February 1, 2016, arguing consummation of the DOE Contract occurred when it was executed on September 30, 2014. NCS disagrees, and has moved for judgment on the pleadings. It argues consummation of the DOE Contract did not occur until performance began in September of 2016, well after the expiration of the Agreement.

## II. THE 12(c) STANDARD

Under Fed. R. Civ. P. 12(c), a court will grant judgment on the pleadings if, on the basis of the pleadings, no material issue of fact remains and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 12(c); *DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 259 (3d Cir. 2008). The standard governing a Rule 12(c) motion is the same as the one governing motions to dismiss under Rule 12(b)(6). *See Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004).

3

The Court must accept the nonmoving party's well-pleaded factual allegations as true and construe those allegations in the light most favorable to the nonmoving party, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008), but will disregard any unsupported conclusory statements, *see DiCarlo*, 530 F.3d at 262–63. *See also Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988) ("Under Rule 12(c), judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.").

The Third Circuit uses a three-step process to determine the sufficiency of a complaint. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1947 (3d Cir. 2010)). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citing *Iqbal*, 129 S.Ct. at 1950). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (citing *Iqbal*, 129 S.Ct. at 1950).

As with a Rule 12(b)(6) motion, in deciding a Rule 12(c) motion the court generally does not consider matters outside the pleadings. *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 257 (3d Cir. 2004). The court, however, may consider matters of public record, orders and exhibits attached to the complaint. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

### III.    DISCUSSION

NCS argues it could not have breached the Agreement because the DOE Contract was not consummated before February 1, 2016. "To establish a breach of contract claim, a plaintiff has the

4

burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265, 920 A.2d 678, 689 (App. Div. 2007) (citation omitted). The parties do not dispute the validity of the Agreement. For purposes of this motion, the only relevant question is whether the execution of the DOE Contract is a "consummation" within the meaning of the Agreement, and this presents a question of the construction of the contract.

A court enforces contracts "based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying purpose of the contract." *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 226 N.J. 403, 415 (2016) (citations and internal quotations omitted). When "the language of a contract is plain and capable of legal construction, the language alone must determine the agreement's force and effect." *Manahawkin Convalescent v. O'Neill*, 217 N.J. 99, 118 (2014). Furthermore, the terms of a contract must be given their plain and ordinary meaning, and "[w]hether a term is clear or ambiguous is . . . a question of law." *Kaufman v. Provident Life and Cas. Ins. Co.*, 828 F. Supp. 275, 282 (D.N.J. 1992), *aff'd*, 993 F.2d 877 (3d Cir. 1993). In short, "[a] writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together." *Barco Urban Renewal Corp. v. Housing Auth. of Atlantic City*, 674 F.2d 1001, 1009 (3d Cir. 1982) (citing Restatement (Second) of Contracts § 202(2) (1981)). A "court should not torture the language of [a contract] to create ambiguity." *Stiefel v. Bayly, Martin & Fay, Inc.*, 242 N.J. Super. 643, 651, 577 A.2d 1303 (1990).

We begin by noting the purpose of the Agreement. Per the express terms of the Agreement, NCS engaged Net Gain, to the exclusion of any other consultant, to introduce NCS to debt-collection business relationships. The Agreement states that NCS would not solicit any federal contractors on its own accord. In exchange, NCS would pay Net Gain a finder's fee for finding

5

business. From the plain language of the Agreement, then, the parties entered into a relationship similar to that of any other commission-based relationship, and broadly agreed to have NCS pay Net Gain if Net Gain found, or did work that led to, future federal contracting business. Because "the court must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain," *Anthony L. Petters Diner, Inc. v. Stellakis*, 202 N.J. Super. 11, 27, 493 A.2d 1261 (App. Div. 1985), we read the Agreement with this purpose in mind.

We turn now to the challenged clause:

> If at any time during the term of this agreement, or one year thereafter (the "Applicable Period"), any Fee Transaction (as hereinafter defined) is consummated by Principal [NCS] or any entity controlling, controlled by or under common control with Principal (hereinafter referred to as a "Principal Affiliate"), then Principal shall pay to Consultant [Fed Cetera], for the duration of the term of any agreement resulting in Said Fee Transaction (a "Principal-Third Party Agreement"), including renewals, a finder's fee (the "Fee") in the amount of two and one-half percent (2.5%) of gross revenues paid pursuant to the Principal-Third Party Agreement.

For purposes of this dispute, this language may be rendered in plain English as:

> If before February 1, 2016, NCS consummates a fee transaction, it shall pay Fed Cetera the amount of 2.5% of gross revenues paid pursuant to any agreement resulting in a fee transaction.

The parties disagree on the meaning of "to consummate." This is a transitive verb; *someone* must consummate *something else*, and that fact alone sheds light on its meaning: it is an action, and if NCS *does something*, it has to pay Fed Cetera. Furthermore, the plain and ordinary meaning of "to consummate" is clear and unambiguous. "In common acceptation the meaning of the transitive verb 'consummate' is 'to bring to completion that which was intended or undertaken to be done.'" *Todiss v. Garruto*, 34 N.J. Super. 333, 338 (App. Div. 1955). *See also Black's Law Dictionary* (10th ed. 2014) ("consummate" means "completed; fully accomplished."); *West's Encyclopedia of Law* (2d ed. 2008) ("To consummate an agreement is to carry it out completely,

as in a consummated sale. It is to bring to completion whatever was either intended or undertaken to be done."). Therefore, it is fair to read the Agreement as follows:

> If before February 1, 2016, NCS *carries out* a fee transaction, it shall pay Fed Cetera the amount of 2.5% of gross revenues paid pursuant to any agreement resulting in a fee transaction.

We now turn to "fee transaction" and its interplay with "to consummate." The Agreement provides that if "any Fee Transaction is consummated" by NCS before February 1, 2016, then NCS shall pay Fed Cetera a finder's fee. The parties' choice of the term "fee transaction" suggests the intent of the parties. The definition of transaction is itself instructive:

> *Transaction n.* 1. The act or an instance of conducting business or other dealings; esp., the formation, performance, or discharge of a contract. 2. Something performed or carried out; a business agreement or exchange. 3. Any activity involving two or more persons.

TRANSACTION, Black's Law Dictionary (10th ed. 2014).

A transaction is *something people do*. By contrast, a contract is something that *governs how people do something*. This is the difference between buying a coffee and getting a receipt. We may speak of someone "performing a contract," but the contract itself is an agreement, a plan, a method, the rules. And this sheds some light on the meaning of the Agreement. If consummating something is an action, and a transaction is a noun that means "an action," then for NCS to *consummate a fee transaction* implies two separate actions at distinct times: one for the "consummation" and one for the "fee transaction," with the former ratifying the latter. Fed Cetera's position, of course, is that the September 30, 2014 execution of the DOE Contract is *both* a fee transaction and a consummation, but that is inconsistent with the choice of words in the Agreement: if it is both, then why bother consummating anything? The parties were free to write something like:

> If before February 1, 2016, *NCS executes any contract*, it shall pay Fed Cetera the amount of 2.5% of gross revenues paid pursuant to any agreement resulting in a fee transaction.

But they didn't write that. Instead, the parties agreed NCS would pay Net Gain (and later Fed Cetera) when NCS consummated a fee transaction—and that can only mean NCS would have to pay a finder's fee once when the DOE Contract was performed.

Although this is sufficient to show the proper construction of the Agreement, there is one more data point suggestive of the intent of the parties. The definition of "fee transaction" itself suggests that "consummation" should be understood as performance. The Agreement defines "fee transaction" as "the subsequent consummation of any contract with any Federal government agency for which Principal [NCS] has been invited to compete, and is later awarded a contract to perform. . . ." This is not a model of clarity and contains some confusing redundancies, but if put into plain English, with reference to the purpose of the Agreement, this may be rendered as:

> A fee transaction is a subsequently-consummated contract with a federal government agency that was awarded to a bidder with the purpose of collecting debts at a later date.

Put thusly, the meaning of "fee transaction" becomes clear. If a fee transaction has to be a contract for which NCS was "invited to compete, and [was] later awarded a contract to perform," then a fee transaction has to involve a contract that was "awarded" for the purpose of collecting later debts. As we noted above, a "consummated fee transaction" implies *two actions*, and the definition of "fee transaction" tracks this as well, for it expressly contemplates a contract *being awarded* and then *later performed*, two separate events that suggest "consummate" means more here than simple execution.

It thus follows that the Agreement can only be coherently understood as requiring NCS to begin performance for Fed Cetera to be entitled to finder's fees. As such, the complaint fails to state a claim, for the Contract expired well before NCS ever began performance.

**IV.  CONCLUSION**

We find that NCS was not required to pay a finder's fee under the Agreement until it began performance. Fed Cetera has therefore failed to state a claim, for performance began after the Agreement expired. NCS's motion for judgment on the pleadings is **GRANTED**.

Dated: January 30, 2018                              /s Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge