<u>NOT FOR PUBLICATION</u>

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| FED CETERA, LLC, : | |
| : | |
| Plaintiff, : | |
| : | Civil No. 1:17-cv-02809 (RBK/KMW) |
| v. : | |
| : | **OPINION** |
| NATIONAL CREDIT SERVICES, INC., : | |
| : | |
| Defendant. : | |

**KUGLER**, United States District Judge:

This breach of contract case involves an issue of contract interpretation. On January 30, 2018, this Court granted Defendant's Motion for Judgment on the Pleadings. (Doc. No. 22). Plaintiff appealed to the Third Circuit, and the Third Circuit reversed and remanded. (Doc. No. 27); *Fed Cetera, LLC v. Nat'l Credit Servs.*, 938 F.3d 466 (3d Cir. 2019). This Court reopened the case for further proceedings. (Doc. No. 28).

Presently before the Court are two motions. Both Plaintiff Fed Cetera and Defendant National Credit Services have filed motions for summary judgment. (Docs. Nos. 52, 53). For the reasons stated below, Defendant National Credit Services' motion (Doc. No. 53) is **GRANTED**. Plaintiff Fed Cetera's motion (Doc. No. 52) is **DENIED** as moot.

## I.  BACKGROUND

The factual background for the case is set out in our prior opinion:

> NCS is a Washington corporation in the debt collection business. Net Gain is a consulting and business development firm that provides services related to the acquisition of federal contracts to businesses in the debt collection business. On February 1, 2010, NCS and Net Gain entered into a contract (the "Agreement").

1

Under the Agreement, Net Gain was to seek and secure business for NCS, for which it would be paid a finder's fee. A few years after entering the Agreement, on January 1, 2013, Net Gain assigned its rights to Plaintiff Fed Cetera, LLC, a New Jersey limited liability company. . . .

Net Gain had previously introduced NCS to the company Account Control Technology, a Private Collection Agency ("PCA") with which NCS subsequently subcontracted. This appears to have been a "Fee Transaction" within the meaning of the Agreement, and Fed Cetera asserts that NCS has been paying what is essentially a commission fee for this introduction.

In 2013, the Department of Education published a solicitation to contract with it as a PCA for collecting student loan debts. The Department expressly invited NCS to participate. NCS and the Department then signed a contract (the "DOE Contract") on September 30, 2014. However, NCS did not begin performing work for the Department as a PCA until September 2016.

 (Doc. No. 21) (citations omitted).

The dispute centered on the interpretation of a clause setting out fees:

**Compensation.** If at any time during the term of this agreement, or one year thereafter (the "Applicable Period"), any Fee Transaction (as hereinafter defined) is consummated by Principal [NCS] or any entity controlling, controlled by or under common control with Principal (hereinafter referred to as a "Principal Affiliate"), then Principal shall pay to Consultant [Fed Cetera], for the duration of the term of any agreement resulting in Said Fee Transaction (a "Principal-Third Party Agreement"), including renewals, a finder's fee (the "Fee") in the amount of two and one-half percent (2.5%) of gross revenues paid pursuant to the Principal-Third Party Agreement.

(Compl. Ex. A ¶ 5).

Fed Cetera brought this action seeking payment for the DOE Contract, arguing that the "DOE Contract" is a "Fee Transaction" consummated before the Agreement expired. (*See* Doc. No. 21). Defendant National Credit Services, Inc. (NCS) moved for Judgment on the Pleadings, arguing that the DOE Contract did not occur until performance began in September of 2016, after the Agreement had expired. We granted that motion, finding that in the disputed contract language, to "consummate" means to finish or to carry out. Under that definition, NCS would have to pay a finder's fee only when a "Fee Transaction" was "consummated," i.e., when the DOE Contract was

2

performed. (*Id.*). Because the DOE Contract was performed after the Agreement expired, we found that Fed Cetera could not collect fees for the DOE Contract and had failed to state a claim. (*Id.*).

The Third Circuit reversed. *Fed Cetera, LLC v. Nat'l Credit Servs.*, 938 F.3d at 473. The question before the Third Circuit was when the DOE Contract was "consummated." *Id.* at 470. They found that "consummate" does not have one particular definition in the body of New Jersey case law, and its definition when used as a verb includes "to achieve" and "to perfect." *Id.* at 472 (citing Black's Law Dictionary). The Agreement defines "Fee Transaction" as a "consummation" or "subsequent consummation" of one of two types of debt collection contracts. *Id.* So, when the Agreement refers to a Fee Transaction (which itself is a consummation) as consummated, this is a reference to when the Fee Transaction is *formed*; a consummation is consummated at its inception. *Id.* The performance of a Fee Transaction has no bearing on when it was consummated, so performance of the DOE Contract had no bearing on whether the DOE Contract was consummated in the Applicable Period. *See id.* ("[T]he Agreement contemplates the ongoing payment of the finder's fee throughout the life of a relevant contract every time [NCS] received revenue from its work on the contract. Because fees are owed only after a contract is 'consummated,' the Agreement cannot be using 'consummation' to mean 'fully complete performance on the contract.'").

Upon the Third Circuit's decision, we reopened the case for further proceedings. (Doc. No. 28). Discovery followed. Both parties now move for summary judgment. Fed Cetera argues that, per the Third Circuit, the DOE Contract is a Fee Transaction consummated *before* the expiration of the Agreement, so the fee is due.

In NCS's motion for summary judgment, NCS raises additional arguments not contemplated by this Court or the Third Circuit in the prior proceedings. Before, NCS had argued that a fee for the DOE Contract is not due because of timing: the DOE Contract was performed

outside of the Agreement's applicable time period. Now, after the Third Circuit has foreclosed this argument, NCS presents additional arguments regarding the nature of the DOE Contract and how it falls outside the scope of the Agreement's compensation provision. We note that the Agreement has an integration clause and is governed by the law of New Jersey.

## II. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of showing the absence of a "genuine issue of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). "When opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir.

2002)). The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998), and credibility determinations are for the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

The parties agree that New Jersey state law governs the Agreement. To interpret the Agreement, we must "discern and implement the common intention of the parties." *Ciolino v. Ameriquest Transp. Servs.*, 751 F. Supp. 2d 776, 778-79 (D.N.J. 2010). We consider the text of the contract in the context of the circumstances at the time it was drafted, and we "apply a rational meaning in keeping with the expressed general purpose." *Id.* "Under New Jersey law, extrinsic evidence is admissible … 'even when the contract on its face is free from ambiguity.'" *Id.* (quoting *Conway v. 287 Corporate Ctr. Assocs.*, 901 A.2d 341, 347 (N.J. 2006)).

This iteration of the parties' dispute involves a section of the contract that neither this Court nor the Third Circuit addressed in the prior proceedings:

> **5. Compensation.** … The term "Fee Transaction" means the consummation, with any Federal contractor, of any transaction related to "teaming" or "subcontracting" as those terms are commonly understood in Federal contracting, for the benefit of Principal or Principal Affiliate, during the Applicable Period. **The term "Fee Transaction" also means the subsequent consummation of any contract with any Federal government agency for which [NCS] has been invited to compete, and is later awarded a contract to perform, which both parties herein expressly agree shall have arisen due to any "teaming" or "subcontracting" engagement Finder may have facilitated in advance of any such award of a contract by a Federal government agency.** The Fee shall be due and payable until fees are no longer generated from any and all Fee Transactions, within thirty (30) days after each receipt during such period by Principal or Principal Affiliate of revenue resulting from or in any way related to the Fee Transaction, including any fees paid after the expiration or termination of any contract by such Third Party.

(Compl. Ex. A ¶ 5) (emphasis added).

Here, "consummated" means "entered into." *Fed Cetera, LLC v. Nat'l Credit Servs.*, 938 F.3d at 473. We read the ¶ 5 clause at issue to state unambiguously that for Net Gain to collect a finder's fee on a general contract that NCS has with a federal agency, said general contract must have arisen due to subcontracting or teaming that Net Gain facilitated. "Facilitated" is not defined as a term in the contract. Its use here indicates that Net Gain had to do something or put forth some effort relating to the general contract for the general contract to be considered a "Fee Transaction." That is, Fee Transactions do not include all general contracts, just those that "arose due to" a "'teaming' or 'subcontracting' agreement" that Net Gain facilitated.

Net Gain did make efforts to help NCS achieve a subcontract with a federal contractor, for which NCS paid a finder's fee. Nowhere in the record is there a suggestion that Net Gain did anything relating to the separate, subsequent general contract that NCS achieved. Without the requisite "facilitat[ion]" from Net Gain, the general contract is not a "Fee Transaction" under the agreement, and NCS is not in breach of contract for failure to pay a finders' fee.

Because this case is resolved as a matter of contract interpretation, where the disputed clause is unambiguous and no material factual disputes remain, summary judgment for NCS is appropriate. Although this is sufficient to show the proper construction of the Agreement, we add that our reading of ¶ 5 is consistent with the parties' intent, the "surrounding circumstances" and "the purpose of the contract," which are to be considered in contract interpretation matters under New Jersey law. *Fed Cetera, LLC v. Nat'l Credit Servs.*, 938 F.3d at 469. The surrounding circumstances were that Net Gain offered assistance securing a subcontract with a debt collection general contractor, and NCS intended to pursue a subcontract with Net Gain's assistance. All of Net Gain's advertising and communications to NCS related to subcontracting, not general contracting. And the purpose of the Agreement can be found, *inter alia*, in its text, which sets out

a finder's fee arrangement for subcontracting and only accounts for general contracting in the event
that the general contract "a[rose] due to any 'teaming' or 'subcontracting' engagement Finder may
have facilitated in advance" of the general contract.

### IV. CONCLUSION

For the foregoing reasons, Defendant National Credit Services' motion (Doc. No. 53) is
**GRANTED**. Plaintiff Fed Cetera's motion (Doc. No. 52) is **DENIED** as moot. An order follows.


Dated:     10/13/2021


                                       ROBERT B. KUGLER
                                       United States District Judge